UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT PERREAULT #722478,

   Plaintiff,            Hon. Ellen S. Carmody

v.                   Case No. 1:16-cv-1447

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

   Defendants.
_____/

## OPINION

On May 10, 2018, the parties consented to the jurisdiction of this Court for all further proceedings, including trial and an order of final judgment. *See* 28 U.S.C. § 636(c)(1). Plaintiff alleges that he was denied a religious dietary accommodation in violation of his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). On June 27, 2018, this Court conducted a bench trial. As articulated herein, the Court finds for Defendants on both of Plaintiff's claims.

**I.  Plaintiff's First Amendment Claims**

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, "simply

because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have

concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue. . .Defendants must still articulate their interest in the regulation. . .Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").

The Court concludes, therefore, that with respect to the *Turner* factors, Defendants bear the initial burden to articulate a valid, rational connection between the challenged action and the legitimate governmental interest which motivated such. This burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156.

Defendant David Leach testified that during the time period relevant in this matter he was employed by the Michigan Department of Corrections (MDOC) as Special Activities Coordinator. In this capacity, Leach oversees the MDOC's "religious programming," including evaluating requests by prisoners for religious meal accommodations. On November 16, 2015, Defendant Leach denied Plaintiff's request for "religious meal accommodation." Pursuant to MDOC Policy, a prisoner whose religious meal accommodation request is denied must wait twelve (12) months before submitting another such request. On November 22, 2016, Defendant Leach again denied Plaintiff's request for "religious meal accommodation."

Leach based his decisions on the fact that Plaintiff was contemporaneously purchasing food items which were inconsistent with the religious meal accommodation he was

4

requesting. Leach testified that Plaintiff's actions in this regard called into question the sincerity of his professed religious beliefs. Leach testified that permitting prisoners to participate in the religious meal program while simultaneously purchasing foods which were inconsistent with their requested religious diet presented security concerns. Because only certain MDOC facilities can accommodate religious dietary requests, there is a concern that prisoners may request a religious dietary accommodation simply for the purpose of obtaining a transfer to a more desirable location. Defendant Leach also testified that because providing prisoners with a religious diet imposes increased costs on the MDOC, prison officials reasonably attempt to limit participation to those prisoners whose religious beliefs are sincere and who otherwise comply with relevant MDOC policy.

Plaintiff acknowledged purchasing food items which were inconsistent with the religious meal accommodation he was requesting. Plaintiff asserted that he did not consume such food, however, but instead sold and/or traded it as part of a "prison store" he was operating out of his cell. Defendant Leach testified that Plaintiff never informed him that he was purchasing objectionable food items for re-sale rather than consumption. Plaintiff conceded that he had never informed Leach of this circumstance.

In sum, the evidence presented reveals that Plaintiff's requests for religious meal accommodation were denied because Plaintiff's contemporaneous prisoner store food purchases were inconsistent with his professed religious beliefs. It is well recognized that prison officials have a legitimate penological interest in controlling the cost of special religious diets. *See, e.g., Green v. Tudor*, 685 F.Supp.2d 678, 698 (W.D. Mich. 2010) (recognizing that the State of Michigan "expends significant financial and administrative resources" providing prisoners with

religious diets that are "expensive, diverting resources from other penological goals"); *see also*, *Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009) (prison officials have a legitimate penological interest in controlling the cost of special religious diets). It is reasonable for prison officials to deny special religious diets to prisoners who consume or purchase food which is inconsistent with the requested religious diet. *See Berryman*, 343 Fed. Appx. at 6.

It is also well recognized that prison officials have a legitimate interest in "maintaining discipline within the prison." *Ibid.* Permitting Plaintiff to participate in a religious diet program when he has a demonstrated history of consuming or purchasing food in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment among prisoners who adhere to their faith's dietary restrictions. In sum, Defendants have established that there exists a valid, rational connection between their actions and the legitimate governmental interest put forward to justify such.

The remaining Turner factors likewise weigh in Defendants' favor. Defendant Leach testified that prisoners which do not receive a specific religious meal accommodation can nevertheless choose to eat from the non-meat/vegetarian meal line. Prisoners can also supplement their diet by purchasing kosher food items from the prison store. Defendant Leach testified that Plaintiff has not been permanently barred from receiving a religious diet accommodation, as Plaintiff can reapply for such as provided in the relevant MDOC Policy Directive. In sum, the evidence compels the conclusion that Plaintiff's First Amendment right to freely exercise his religion was not violated by Defendant Leach's decisions not to allow Plaintiff to receive a religious dietary accommodation. Accordingly, the Court finds for Defendants on Plaintiff's First Amendment claims.

**II.       Plaintiff's RLUIPA Claims**

RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). RLUIPA does not define the phrase "substantial burden." Nonetheless, courts have concluded that a "burden" on religious exercise is "substantial" only where such imposes "a significantly great restriction or onus upon such exercise" which "directly coerces the religious adherent to conform his or her behavior accordingly." *Sanders v. Ryan*, 484 F.Supp.2d 1028, 1034 (D. Ariz. 2007) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005)); *Konikov v. Orange County, Florida*, 410 F.3d 1317, 1323 (11th Cir. 2005).

To come within the scope of RLUIPA the burden in question must render religious exercise "effectively impracticable." *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)); *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise). Moreover, a burden is less than "substantial" where it imposes merely an "inconvenience on religious exercise." *See, e.g., Konikov*, 410 F.3d at 1323.

Plaintiff bears the burden to establish that his ability to exercise his religion has been substantially burdened. *See Kaufman v. Schneiter*, 474 F.Supp.2d 1014, 1025 (W.D. Wis. 2007). Removal from a kosher meal program or denial of participation in such does not constitute a substantial burden unless the removal or denial is *permanent*. *See, e.g., Ketzner v. Williams*, 2008 WL 4534020 at *26 (W.D. Mich., Sept. 30, 2008). Moreover, even if the Court assumes

that Plaintiff's ability to practice his religion has been substantially burdened, as discussed above, Defendants have established that their actions constitute the least restrictive means of furthering compelling governmental interests. *Ibid.*; *Treece v. Burnett*, 2007 WL 2815020 at *6 (W.D. Mich., Sept. 25, 2007) ("[w]hile RLUIPA provides certain protections to an inmate's ability to express his religious faith, RLUIPA does not elevate accommodation of religious observances over an institution's need to maintain order and safety"). In sum, the evidence compels the conclusion that Plaintiff's rights under RLUIPA were not violated by Defendant Leach's decisions not to allow Plaintiff to receive a religious dietary accommodation. Accordingly, the Court finds for Defendants on Plaintiff's RLUIPA claims.

## **CONCLUSION**

For the reasons articulated herein, the Court finds for Defendants on Plaintiff's First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) claims. An Order consistent with this Opinion will enter.

Date: August 1, 2018  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge